UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>– *against* –<br><br>RICHARD WITCHER,<br><br>Defendant. | **OPINION AND ORDER**<br>17 Cr. 569 (ER) |

RAMOS, D.J.:

Richard Witcher moves the Court to terminate his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). Doc. 265. For the following reasons, Witcher's motion is GRANTED.

I.     BACKGROUND

On October 17, 2018, Witcher pleaded guilty to a one-count superseding information charging him with conspiracy to commit wire fraud for his involvement in a scheme to place unauthorized and recurring charges on victims' credit cards, in violation of 18 U.S.C. § 1349. Doc. 126. On March 6, 2019, the Court sentenced Witcher to three years of supervised release, with six months of home detention and 500 hours of community service. Doc. 157. Additionally, the Court ordered Witcher to pay restitution in the amount of $470,000. *See id.* Among the conditions of Witcher's supervision, and relevant here, he must not knowingly leave the federal judicial district where he is authorized to reside without first obtaining permission from the Court or his probation officer. Doc. 183 at 3.

On March 18, 2021, Witcher filed the instant motion for early termination of his supervised release. Doc. 265. On March 24, 2021, the Government filed its response, opposing Witcher's request. Doc. 267. The Probation Department for the Middle District

of Florida, which supervises Witcher, has not taken a position on his request for early termination.  Doc. 265 at 1 n.1.

## II.   DISCUSSION

A court may "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release" after considering certain sentencing factors outlined in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3583(e)(1).  Those factors require a court "to consider general punishment issues such as deterrence, public safety, rehabilitation, proportionality, and consistency." *United States v. Lussier*, 104 F.3d 32, 35 (2d Cir. 1997); *see also United States v. Erskine*, No. 5 Cr. 1234 (DC), 2021 WL 861270, at *1 (S.D.N.Y. Mar. 8, 2021).  "The Supreme Court has recognized that 'supervised release fulfills rehabilitative ends, distinct from those served by incarceration.'" *Untied States v. Trotter*, 321 F. Supp. 3d 337, 345 (E.D.N.Y. 2018) (quoting *United States v. Johnson*, 529 U.S. 53, 59 (2000)); *see also Erskine*, 2021 WL 861270, at *1.  Accordingly, "[s]upervised release is not, fundamentally, part of the punishment; rather, its focus is rehabilitation." *United States v. Aldeen*, 792 F.3d 247, 252 (2d Cir. 2015), *superseded by statute on other grounds as stated in United States v. Smith*, 949 F.3d 60 (2d Cir. 2020); *see also Erskine*, 2021 WL 861270, at *1.

Further, to terminate a term of supervised release, a court must conclude that such an action is warranted by (1) the conduct of the defendant released and (2) the interest of justice.  18 U.S.C. § 3583(e)(1).  Exceptionally good behavior or changed circumstances may render the "previously imposed term of release 'either too harsh or inappropriately tailored to serve the general punishment goals of § 3553(a).'" *See United States v. Jiminez*, No. 92 Cr. 91 (RJD), 2021 WL 535208, at *1 (E.D.N.Y. Feb. 12, 2021) (quoting *Lussier*, 104 F.3d at 36); *see also United States v. Sam*, No. 16 Cr. 184 (JGK), 2018 WL 836055, at *1 (S.D.N.Y. Feb. 12, 2018).  However, those circumstances "are not a limit on a district court's statutorily granted authority to terminate" a term of supervised release.  *United States v. Trotter*, 321 F. Supp. 3d 337, 359–60 (E.D.N.Y. 2018); *see also*

*Erskine*, 2021 WL 861270, at *2.  "Ultimately, '[t]he decision whether to grant early termination rests within the discretion of the district court.'"  *Erskine*, 2021 WL 861270, at *2 (quoting *United States v. Harris*, 689 F. Supp. 2d 692, 694 (S.D.N.Y. 2010)).

Witcher asserts, and the Probation Departments states, that he has remained in full compliance with the terms of his supervision.  *See* Doc. 265 at 1–2, 8.  Witcher has served the entirety of his six months of home detention without incident or infraction, and he has volunteered 500 hours at United Against Poverty's "Share Grocery Program" in Orlando, Florida.  *See id.* at 5–6, 8.  Additionally, Witcher is currently employed as a dispatcher at a trucking company, and he makes monthly restitution payments of $240.  *See id.* at 2, 8.

The Government does not dispute that Witcher has been in full compliance with the terms of his supervision.  Instead, the Government argues that early termination is not warranted where a defendant has done nothing more than what he was required to under the terms of his supervision.  However, where an individual has fully complied with the terms of his supervision, and has taken considerable strides in reintegrating into his community through employment and service, courts are well within their discretion to conclude that early termination is warranted based on that individual's conduct and the interest of justice.  *See Erskine*, 2021 WL 861270, at *2; *Sam*, 2018 WL 836055, at *1; *United States v. Cummings*, No. 6 Cr. 481 (JGK), 2017 WL 946349, at *1 (S.D.N.Y. Mar. 7, 2017); *United States v. Bethea*, No. 5 Cr. 1234 (DC), 2015 WL 13776431, at *1 (S.D.N.Y. Dec. 7, 2015).

Moreover, Witcher notes that he has an opportunity to rejoin the company that employed him prior to his home detention.  Doc. 265 at 2.  According to that company's owner, Witcher would be hired as a truck driver and receive a weekly salary of between $900 and $1,500—well over the $600 a week he currently earns.  *See id.* at 2, 11.  That position, however, requires Witcher to travel from state and to state and to be on the road for prolonged periods of time, and due to customer demands, Witcher would not be

3

provided with his route schedule far in advance. *Id.* at 11. Witcher asserts that the terms of his supervised release—including travel restrictions and short notice for drug tests and home inspections—prevent him from accepting this job.

The Court agrees that Witcher has shown that being on supervised release creates multi-faceted obstacles to his employment prospects. *See Harris*, 689 F. Supp. 2d at 695. Although the Government notes that the Probation Department could pre-approve Witcher's travel outside of the Middle District of Florida for periods of three to six months, subject to certain conditions such as requiring driver's logs, the Government's proposal would significantly increase the administrative burdens associated with Witcher's supervision, thereby restricting his employment prospects and running counter to the rehabilitative purposes of supervised release. *See id.*; *Sam*, 2018 WL 836055, at *1; *see also Trotter*, 321 F. Supp. 3d at 345–46. The Government also suggests that Witcher's outstanding restitution balance—over $464,000 at the time it filed its response—should bar early termination. However, as noted, Witcher has consistently paid towards his restitution obligation, and early termination would allow him to increase the amount of his restitution payments going forward. Accordingly, the Court concludes that Witcher's conduct and the interest of justice require the termination of his supervised release. *See Harris*, 689 F. Supp. 2d at 696.

### III. CONCLUSION

For the foregoing reasons, Witcher's motion to terminate his term of supervised release is GRANTED, effective ten days from today. The Clerk of Court is respectfully directed to terminate the motion. Doc. 265.

It is SO ORDERED.

Dated:  April 12, 2021
        New York, New York

EDGARDO RAMOS, U.S.D.J.